**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA**

**Case No. 19-21524-CIV-GAYLES/OTAZO-REYES
(Case No. 15-20032-CR-GAYLES)**

STANLEY PRESENDIEU,

     Movant,

v.

UNITED STATES OF AMERICA,

     Respondent.

_____/

## REPORT AND RECOMMENDATION

THIS CAUSE came before the Court upon Movant Stanley Presendieu's ("Movant" or "Presendieu") Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody (hereafter, "Motion to Vacate") [D.E. 1]. This matter was referred to the undersigned pursuant to 28 U.S.C. § 636 by the Honorable Darrin P. Gayles, United States District Judge [D.E. 5]. The undersigned held an evidentiary hearing on the Motion to Vacate on November 13, 2019 (hereafter, "Evidentiary Hearing") [D.E. 12]. Having conducted a thorough review of the parties' submissions and the pertinent portions of the record and having considered the matters presented at the Evidentiary Hearing, the undersigned RESPECTFULLY RECOMMENDS that the Motion to Vacate be DENIED.

## THE UNDERLYING CRIMINAL CASE

On January 22, 2015, Presendieu and four other individuals were charged by way of Indictment in Case No. 15-20032-CR-GAYLES (hereafter, "Case 15-20032") with the following crimes:

Count 1:        Conspiracy to commit bank fraud, against **Presendieu**, Scarlee Valias Jean ("Jean"), Brian Deronceler ("Deronceler"), Latasha Pharr ("Pharr") and Jason Miles ("Miles"), from March 2010 to August 2014, in violation of 18 U.S.C. § 1349.

Counts 2-22:   Bank fraud, in violation of 18 U.S.C. § 1344, as shown below:

| Count | Defendant(s) | Date | Bank | Individual(s) |
|-------|--------------|------|------|---------------|
| 2 | Miles | 01/28/11 | Wachovia | X.Y.B. |
| 3 | Miles | 02/04/11 | Wachovia | C.J. |
| 4 | Miles | 02/22/11 | Wachovia | A.H. |
| 5 | Miles | 02/22/11 | Wachovia | R.T. |
| 6 | Miles | 02/28/11 | Wachovia | W.J. |
| 7 | **Presendieu**, Pharr | 05/04/12 | Bank of America | J.S. |
| 8 | **Presendieu**, Pharr | 05/11/12 | Bank of America | M.C. |
| 9 | **Presendieu**, Pharr | 05/17/12 | Bank of America | T.A. |
| 10 | **Presendieu** | 10/03/13 | Federal Reserve | U.O. |
| 11 | **Presendieu** | 10/05/13 | Federal Reserve | R.R. |
| 12 | **Presendieu** | 10/05/13 | Federal Reserve | P.W. |
| 13 | **Presendieu** | 10/05/13 | Federal Reserve | D.A.V. |
| 14 | Jean | 10/25/13 | Federal Reserve | J.W. |
| 15 | Jean | 11/06/13 | Federal Reserve | F.W.A. & T.A. |
| 16 | Jean | 11/06/13 | Federal Reserve | J.A.L. & S.A.L. |
| 17 | Jean, Deronceler | 11/15/13 | Federal Reserve | J.G.I. & D.I. |
| 18 | Jean, Deronceler | 11/15/13 | Federal Reserve | J.G. |
| 19 | Deronceler | 02/12/14 | United Missouri | A.S. |
| 20 | Deronceler | 02/12/14 | Ohio Valley | S.D.J. |
| 21 | Pharr | 07/09/14 | Federal Reserve | K.C. |
| 22 | Pharr | 07/09/14 | Federal Reserve | A.G. |

Count 23:       Aggravated identity theft as to individual X.Y.B., against Miles, on January 28, 2011, in violation of 18 U.S.C. § 1028A.

Count 24:       Aggravated identity theft as to individual C.J., against Miles, on February 4, 2011, in violation of 18 U.S.C. § 1028A.

Count 25:       Aggravated identity theft as to individual A.H., against Miles, on February 22, 2011, in violation of 18 U.S.C. § 1028A.

Count 26:       Aggravated identity theft as to individual R.T., against Miles, on February 22, 2011, in violation of 18 U.S.C. § 1028A.

Count 27:       Aggravated identity theft as to individual W.J., against Miles, on February 28, 2011, in violation of 18 U.S.C. § 1028A.

Count 28:      Aggravated identity theft as to individual J.S., against **Presendieu** and Pharr, on May 4, 2012, in violation of 18 U.S.C. § 1028A.

Count 29:      Aggravated identity theft as to individual M.C., against **Presendieu** and Pharr, on May 11, 2012, in violation of 18 U.S.C. § 1028A.

Count 30:      Aggravated identity theft as to individual T.A., against **Presendieu** and Pharr, on May 17, 2012, in violation of 18 U.S.C. § 1028A.

Count 31:      Aggravated identity theft as to individual U.O., against **Presendieu**, on October 3, 2013, in violation of 18 U.S.C. § 1028A.

Count 32:      Aggravated identity theft as to individual R.R., against **Presendieu**, on October 5, 2013, in violation of 18 U.S.C. § 1028A.

Count 33:      Aggravated identity theft as to individual P.W., against **Presendieu**, on October 5, 2013, in violation of 18 U.S.C. § 1028A.

Count 34:      Aggravated identity theft as to individual D.A.V., against **Presendieu**, on October 5, 2013, in violation of 18 U.S.C. § 1028A.

Count 35:      Aggravated identity theft as to individual J.W., against Jean, on October 25, 2013, in violation of 18 U.S.C. § 1028A.

Count 36:      Aggravated identity theft as to individual F.W.A., against Jean, on November 6, 2013, in violation of 18 U.S.C. § 1028A.

Count 37:      Aggravated identity theft as to individual J.A.L., against Jean, on November 6, 2013, in violation of 18 U.S.C. § 1028A.

Count 38:      Aggravated identity theft as to individual J.G.I., against Jean and Deronceler, on November 15, 2013, in violation of 18 U.S.C. § 1028A.

Count 39:      Aggravated identity theft as to individual J.G., against Jean and Deronceler, on November 15, 2013, in violation of 18 U.S.C. § 1028A.

Count 40:      Aggravated identity theft as to individual A.S., against Deronceler, on February 12, 2014, in violation of 18 U.S.C. § 1028A.

Count 41:      Aggravated identity theft as to individual S.D.J., against Deronceler, on February 12, 2014, in violation of 18 U.S.C. § 1028A.

See Indictment [Case 15-20032, D.E. 3].

On January 28, 2015, Presendieu made his initial appearance [Case 15-20032, D.E. 13]. On February 2, 2015, Arnaldo J. Suri, Esq. ("Attorney Suri") was appointed to represent Presendieu pursuant to the Criminal Justice Act ("CJA") [Case 15-20032, D.E. 21].

On August 6, 2015, Presendieu pled guilty to Counts 1 and 31 of the Indictment, pursuant to a cooperation plea agreement.  See Minute Entry [Case 15-20032, D.E. 183]; Plea Agreement [Case 15-20032, D.E. 186]; Factual Proffer [Case 15-20032, D.E. 187].  Movant's plea agreement included a provision at paragraph 8, whereby he agreed to "cooperate fully" with the government. See Plea Agreement [Case 15-20032, D.E. 186 ¶ 8].  At paragraph 9, the government reserved "the right to evaluate the nature and extent of [Movant's] cooperation and to make that cooperation, or lack thereof, known to the Court at the time of sentencing[,]"  and, based on such evaluation, the government, in its "sole and unreviewable judgment[,]" would determine whether to seek a downward departure in Movant's sentence, either prior to or after sentencing, pursuant to Section 5K1.1 of the Sentencing Guidelines or Rule 35 of the Federal Rules of Criminal Procedure, respectively.  Id. ¶ 9.  Paragraph 9 further provided:

> In addition, because the defendant agrees that this Office shall have sole and unreviewable discretion to move for any sentencing reduction based on his cooperation, the defendant agrees that he will not seek a variance from the guideline range under Title 18, United States Code, Section 3553(a) because of any cooperation, although the defendant may move for a variance, if he chooses, because of other grounds, if any, which do not involve cooperation.

Id.

On October 15, 2015, Presendieu was sentenced to a total term of imprisonment of 212 months, consisting of 188 months as to Count 1, plus 24 months as to Count 31, to run consecutively to the term imposed in Count 1.  See Judgment [Case 15-20032, D.E. 279].

On October 27, 2015, Attorney Suri filed a Motion to Withdraw as Attorney for Appeal (hereafter, "Motion to Withdraw") [Case 15-20032, D.E. 300].  On October 28, 2015, Attorney

Suri filed a Notice of Appeal on behalf of Presendieu [Case 15-20032, D.E. 303].  On November 3, 2015, the Court granted Attorney Suri's Motion to Withdraw [Case 15-20032, D.E. 323].  On November 16, 2015, the Court appointed Richard Carroll Klugh, Esq. ("Attorney Klugh") as CJA counsel for purposes of appeal [Case 15-20032, D.E. 331].[1]

On February 20, 2018, the Eleventh Circuit affirmed Presendieu's conviction as to Counts 1 and 31, pursuant to his guilty plea.  See United States v. Presendieu, 880 F.3d 1228, 1250 (11th Cir. 2018).[2]  As described by the Eleventh Circuit, Presendieu raised the following issue on appeal:

> Presendieu complains that his guilty plea is procedurally defective under Rule 11 and unconstitutional because the district court failed to inform him of the nature of the charges, never outlined separately each element of his two offenses, and never asked him whether he understood those elements. Presendieu acknowledges that he raised no constitutional or Rule 11 objections before the district court. Instead, for the first time on appeal, he objects to the plea colloquy and his plea as defective.

Id. at 1237.  Because the issue was first raised on appeal, the Eleventh Circuit's standard of review was limited to "plain error only."  Id. (citing United States v. Moriarty, 429 F.3d 1012, 1018–19 (11th Cir. 2005)).  Applying this standard, the Eleventh Circuit opined as follows:

> [T]he record as a whole establishes that Presendieu: (1) was aware of the charges to which he was pleading guilty, (2) was sufficiently intelligent to understand the nature of those charges, (3) understood that the facts set forth in the factual proffer established that he was guilty of those two particular offenses, (4) had discussed the two charges and the facts in the proffer with his attorney, and (5) unequivocally and intelligently pled guilty to both charges in the plea agreement.  Under these circumstances, we conclude that the district court did not plainly err, either as a matter of constitutional due process or under Rule 11, in accepting Presendieu's guilty plea. Accordingly, we affirm Presendieu's convictions for conspiracy to commit bank fraud (Count 1) and aggravated identity theft (Count 31).

Id. at 1241-42.  A concurring opinion stated:

---

[1]  Attorney Klugh also represents Presendieu in these proceedings.
[2]  The Eleventh Circuit's opinion also addressed Jean's appeal of her sentence, which was vacated and remanded for further proceedings.  Id.

Mr. Presendieu, and the system we are charged with administering, would have been better served with an explanation of the elements of aggravated identity theft. Nevertheless, the court is correct that Mr. Presendieu has not established plain error.

Id. at 1251 (Jordan, J. concurring) (citing Moriarty, 429 F.3d at 1018–20).

## THE MOTION TO VACATE

Presendieu's Motion to Vacate lists the following grounds:

GROUND ONE:   Constitutional violation - plea agreement waiver of constitutional rights of sentencing advocacy.

GROUND TWO:   Ineffective assistance of sentencing counsel.

GROUND THREE:   Ineffective assistance of plea counsel.

See Motion to Vacate [D.E. 1 at 4-7].

Movant acknowledged that he did not appeal the issue raised in GROUND ONE and provided the following explanation for not having done so: "This claim, premised on matters not of record at the time of the appeal, is based on evidence and information not previously available on appeal or due to ineffective assistance was not raised." Id. at 4. At the Evidentiary Hearing, Movant contended without opposition from the government that any exhaustion argument with regard to GROUND ONE had been waived since it had not been raised in opposition to the Motion to Vacate.

## STANDARD OF REVIEW

### 1. *Motion to Vacate.*

Title 28, United States Code, Section 2255 (hereafter, "Section 2255") provides, in pertinent part:

A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral

attack, may move the court which imposed the sentence to vacate, set aside or
correct the sentence.

28 U.S.C. § 2255(a).

### 2. *Ineffective assistance of counsel.*

A claim for ineffective assistance of counsel under 28 U.S.C. § 2255 is subject to the two-pronged test set out in <u>Strickland v. Washington</u>, 466 U.S. 668 (1984). <u>Strickland</u> requires a criminal defendant to show that: (1) counsel's performance was deficient and (2) the deficiency prejudiced the defendant. <u>Id.</u> at 687.

As to the first prong, deficient performance means performance outside the wide range of professionally competent assistance. <u>Id.</u> at 690. The judiciary's scrutiny of counsel's performance is highly deferential. <u>Id.</u> at 689. "Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" <u>Id.</u> (citing <u>Michel v. Louisiana</u>, 350 U.S. 91, 101 (1955)). "In reviewing counsel's performance, a court must avoid using 'the distorting effects of hindsight' and must evaluate the reasonableness of counsel's performance from counsel's perspective at the time." <u>Chandler v. United States</u>, 218 F.3d 1305, 1316 (11th Cir. 2000) (citing <u>Strickland</u>, 466 U.S. at 689). In order for counsel's performance to be considered unreasonable, it must be such that "no competent counsel would have taken the action that . . . counsel did take." <u>Grayson v. Thompson</u>, 257 F.3d 1194, 1216 (11th Cir. 2001) (emphasis omitted). "When courts are examining the performance of an experienced trial counsel, the presumption that his conduct was reasonable is even stronger" and the challenged actions may be considered sound strategy. <u>Chandler</u>, 218 F.3d at 1316 (footnote omitted) (citing <u>Provenzano v. Singletary</u>, 148 F.3d 1327, 1332 (11th Cir. 1998)); <u>see also Strickland</u>, 466 U.S. at

7

689.

As to the second prong, a defendant establishes prejudice by showing that, but for counsel's deficient performance, there is a reasonable probability the outcome of the proceedings would have been different.  Strickland, 466 U.S. at 694.  A reasonable probability is a probability sufficient to undermine confidence in the outcome of the proceedings.  Id.

A defendant must satisfy both the deficiency and prejudice prongs set forth in Strickland to obtain relief on an ineffective assistance of counsel claim; failure to establish either prong is fatal and makes it unnecessary to consider the other one.  Id. at 697.  The Eleventh Circuit has recognized that, given the principles and presumptions associated with ineffective assistance claims, "the cases in which habeas petitioners can properly prevail are few and far between."  Chandler, 218 F.3d at 1313 (alteration omitted) (quoting Waters v. Thomas, 46 F.3d 1506, 1511 (11th Cir. 1995)).  The burden of persuasion on the movant is preponderance of the evidence.  Chandler, 218 F.3d at 1313.

## FINDINGS OF FACT

Presendieu was the only witness who testified at the Evidentiary Hearing.  See Exhibit & Witness List [D.E. 13].  The undersigned admitted into evidence Exhibits 1-14.  Id.  Movant and the government jointly proffered Exhibits 1-11 and they were admitted without objection.  The undersigned also admitted Movant's Exhibits 12-14 over the government's objection, but reserved on the weight, if any, to be assigned to those exhibits.

Following is a summary of Presendieu's testimony.

1.      On direct examination, Presendieu testified that Attorney Suri assisted him in cooperating with the government, telling him he had to talk to the case agent.

2.      As part of his cooperation, Presendieu turned over to the government a laptop, an

iPad and at least two iPhones, and participated in a number of debriefings over several months in 2015.

3.      There were videos and pictures of Deronceler among the items in the electronic devices that Presendieu turned over to the government.    Additionally, Presendieu identified Markeya McLendon ("McLendon") and a person he knew as "B" or "Queen" from pictures in his phone.

4.      Presendieu also identified Calvin Black ("Black") from pictures the government showed him.

5.      In general, Presendieu did not have much information to provide to the government regarding his co-defendants, but he provided information about other persons.

6.      At one point in time, the prosecutor and the case agent accused Presendieu of lying about Deronceler and stopped debriefing him.

7.      Presendieu claimed not to understand that, as part of his plea agreement, he would not be able to present evidence to the Court of his cooperation or its extent; and he also claimed that Attorney Suri did not inform him of this.

8.      Presendieu claimed that Attorney Suri told him his cooperation was good, and that the prosecutor was fair and would move for a Rule 35 sentence reduction.

9.      According to Presendieu, the loss attributable to his conduct was way below $1.5 million.

10.      On cross-examination, Presendieu recalled being taken to a county jail facility in West Palm Beach when he was first arrested and then transported to the Miami courthouse.  On his way to Miami, Presendieu told the case agent he was willing to cooperate with the government.

11.      When asked if the government obtained a warrant to seize a telephone, a computer

and other items from his hotel room, Presendieu claimed not to know, but his counsel stipulated to that fact.

12.      Presendieu also claimed that he was comped with free stays at the Hard Rock Hotel because he was a gambler; and when pressed to admit that he received this benefit because he knew an employee at the hotel, he claimed not to understand the question.  His counsel attempted to stipulate to this line of questioning also.

13.      Presendieu admitted that, as part of the discovery he received in the case, there were audio video recordings of not just himself, but also of his co-defendants.

14.      After viewing the discovery in the case, Presendieu decided to plead guilty, and his lawyer negotiated a written plea agreement with the government.

15.      Presendieu objected to the initial plea agreement because it included a loss amount and, as a result, he obtained a revised agreement that did not require a stipulation of the loss amount.  See Plea Agreement, Ex. 1.  Presendieu would not admit this undisputed fact and his counsel again attempted to stipulate to it.

16.      Presendieu acknowledged that he reviewed the discovery in the case and discussed it with Attorney Suri, and that he objected to portions of the government's proposed plea agreement and held out to get one that was less objectionable to him.

17.      At the Evidentiary Hearing, Presendieu claimed that he never discussed the language in the plea agreement with Attorney Suri.  Yet, he admitted that, during the plea colloquy: he told the Court that he had had enough time to discuss everything that was contained in the plea agreement with his attorney; the Court went over certain provisions of the plea agreement; and the Court gave him the opportunity to ask questions about anything that was set forth in the plea agreement, which he declined.

18.     Presendieu claimed that he went along with everything at the plea colloquy because Attorney Suri told him to say yes so as not to get the prosecutor any more mad at him.  Presendieu also claimed that the only thing he understood in his plea agreement was the money amount, which he knew was wrong.

19.     When asked if he understood that, during the plea colloquy, the judge was giving him the opportunity to tell the judge if he didn't understand the terms of his plea agreement, Presendieu responded that he was not good with law, so he didn't know what exactly the judge was really saying; and that all he knew was that he had gone over everything with Attorney Suri. However, Presendieu then contradicted himself when he claimed he never sat down with Attorney Suri and that he went over nothing.

20.     When asked if he was testifying that, when he was placed under oath, he did not understand that he was swearing to tell the truth, Presendieu evasively responded that he didn't lie about nothing.

21.     Although he claimed that he thought he wasn't getting much time, Presendieu acknowledged that the possibility existed for him to get as much time as he did, up to the maximum penalty.

22.     With regard to the provision in the plea agreement whereby he agreed not to seek a variance based on any cooperation, Presendieu claimed he could not remember the judge reviewing it with him during the plea colloquy, but he said he knew he had read the plea agreement.

23.     Presendieu was asked to review the following portion of the transcript of the change of plea hearing:

> COURT: In that same paragraph [9], it also explains that you are agreeing not to seek a variance from the guideline range, which would be determined at your sentencing based on any cooperation.  You can ask for a variance for other reasons, but you can't request a variance based on your cooperation.  Do you understand

that?

THE DEFENDANT: Yes, sir.

<u>See</u> Transcript of Change of Plea Hearing, Ex. 2, at 7.  Presendieu acknowledged having been asked this question and having given this answer, based on his own understanding as well as discussions with his lawyer.

24.     Presendieu acknowledged that, as part of the sentencing process, he had the right to address the Court and that, when he was asked if he wanted to do so, he replied that he had nothing to say, and that his lawyer did a pretty good job for him.

25.     Presendieu insisted, however, that he was following Attorney Suri's instructions not to speak, not to make anybody mad, not to say anything that could hurt him, and to just go along with the process to get the cooperation out of the way.  He also claimed not to have fully understood then his right to speak to the judge directly, but, at the same time, acknowledged that he knew he had a choice to speak or not to speak at the sentencing hearing.

26.     On repeated questioning, Presendieu finally acknowledged that, at the time of sentencing, he thought his lawyer had done a pretty good job for him.

27.     Presendieu's explanations of why he believed that the prosecution was mad at him in relation to his cooperation were equivocal and inconsistent.

28.     On re-direct examination, Presendieu claimed to have sent an email to Attorney Suri telling him he had done a bad job and that the prosecutor had outdone him.

29.     Presendieu claimed that, when he was asked if he understood the provision in the plea agreement whereby he agreed not to seek a variance based on any cooperation, he was not trying to mislead the Court; he was just saying yes to everything like Attorney Suri told him to do. He also claimed never to have read that provision before, even though he had just testified in

connection with this provision that he knew he had read the plea agreement. He also testified that, from his current knowledge, a variance allows getting under the guidelines.

30.     With regard to the laptop and the phone obtained from the hotel room at the Hard Rock, Presendieu claimed that they could not be accessed without the passcode provided by him, so a search warrant would have been useless.

31.     Presendieu claimed that, other than his telling the government that he did not know whether Deronceler in fact had a twin, the government did not indicate that anything else in his debriefing was wrong. Presendieu claimed that he still did not know whether Deronceler had a twin.

32.     The undersigned assigns no credibility to Presendieu's testimony. Presendieu was evasive, self-contradictory and equivocal numerous times during his cross-examination. The undersigned found his attempts to establish lack of knowledge and understanding during the change of plea and sentencing process to be self-serving and wholly unworthy of belief.

## CONCLUSIONS OF LAW

In GROUND ONE, Movant challenges the constitutionality of the provision in his plea agreement whereby he agreed not to seek a variance based on any cooperation (hereafter, "Variance Waiver Provision"). Movant argues that the Variance Waiver Provision violates the due process requirement that a sentence be predicated on an adequate and complete factual record because it precluded Movant from presenting evidence of his cooperation at the sentencing hearing. According to Movant, the Variance Waiver Provision barred such presentation both on its face and as applied by Attorney Suri. Movant contends that the sentence imposed on him might have been different if the Court had heard at the sentencing hearing that Movant had been

cooperating with the government the entire time that he was being prosecuted.[3]  As relief, Movant

seeks to be resentenced without the restrictions of the Variance Waiver Provision and with full

presentation of his cooperation to the sentencing judge.[4]

In GROUND TWO, Movant contends, purportedly in the alternative to GROUND ONE,

that Attorney Suri was ineffective at the sentencing stage by failing to argue that Movant was not

barred by the Variance Waiver Provision from introducing cooperation evidence at the sentencing

hearing.  Movant also argues that Attorney Suri was ineffective at the sentencing stage: by failing

to seek a continuance of the sentencing hearing so that Movant could get the benefit of an

upcoming revision to the sentencing guidelines; and by not challenging the loss amount computed

by the government.

In GROUND THREE, Movant argues that Attorney Suri was ineffective at the plea stage

by failing to explain to him the meaning and effect of the Variance Waiver Provision.

### 1.  *Claim of unconstitutionality of the Variance Waiver Provision.*

Initially, the undersigned recognizes that the Variance Waiver Provision does not stand

alone in Movant's plea agreement; rather, it is part and parcel of Movant's agreement to cooperate

with the government in conjunction with his guilty plea.  See Plea Agreement, Ex. 1 ¶ 9.

Specifically, in paragraph 9 of the plea agreement, the government reserved "the right to evaluate

the nature and extent of [Movant's] cooperation and to make that cooperation, or lack thereof,

known to the Court at the time of sentencing."  Id.  In that same paragraph, Movant agreed not to

---

[3]  Petitioner proffered Exhibits 12-14 as evidence that his cooperation resulted in the prosecution of
additional defendants, namely Richard A. Price, Markeya McLendon, and Calvin A. Black.  See Ex. 12,
Factual Proffer in Support of Guilty Plea, United States v. Price, Case No. 15-20129-CR-MOORE; Ex. 13,
Factual Proffer, United States v. McLendon, Case No. 18-80167-CR-COHN; Ex. 14, Response to United
States' Objections to the Presentence Investigation Report and Objections to the Second Addendum to the
Presentence Report, United States v. Black, Case No. 16-20167-CR-LENARD.
[4]  At the Evidentiary Hearing, Attorney Klugh argued that, given the nature of the constitutionality
challenge, the credibility of his client's testimony was irrelevant.

seek a variance based on any cooperation "because" he had also agreed that the government had "sole and unreviewable discretion to move for any sentencing reduction based on [Movant's] cooperation . . . ." Id.  A reading of these two paragraph 9 clauses *in pari materia* shows that the Variance Waiver Provision was an integral part of the cooperation agreement, whose validity and constitutionality Movant does not challenge.

Movant argues that the Variance Waiver Provision runs afoul of the Constitution's Due Process Clause because it barred defense counsel from presenting any cooperation evidence to the sentencing judge.  Movant first makes a facial constitutional challenge to the Variance Waiver Provision.  Movant also contends that the Variance Waiver Provision is unconstitutional as applied, arguing that Attorney Suri interpreted it to preclude him from presenting cooperation evidence to the sentencing judge, given that he did not do so at the sentencing hearing.  With regard to the "as applied" argument, however, it is clear that the sentencing judge was aware of the fact that Movant had entered into a cooperation plea agreement, as shown by the detailed discussion at the change of plea hearing.  See Transcript of Change of Plea Hearing, Ex. 2, at 7-8.  Additionally, cooperation was in fact mentioned at the sentencing hearing by the prosecutor, who said that Movant "ha[d] made efforts to cooperate with the United States to a degree."  See Transcript of Sentencing Hearing, Ex. 3 at 29.[5]

In his Motion to Vacate [D.E. 1 at 15], Movant relies for his facial constitutional due process challenge on the following passage from United States v. Tucker, 404 U.S. 443 (1972):

> For we deal here, not with a sentence imposed in the informed discretion of a trial judge, but with a sentence founded at least in part upon misinformation of constitutional magnitude.  As in Townsend v. Burke, 334 U.S. 736 (1948), 'this prisoner was sentenced on the basis of assumptions concerning his criminal record which were materially untrue.'  Id. at 741.

---

[5]  Movant argues that this statement diminished the quality of his cooperation by the use of the qualifier "to a degree."  Movant cannot dispute, however, that the government had reserved in the plea agreement "the right to evaluate the nature and extent of [Movant's] cooperation."  See Plea Agreement, Ex. 2 ¶ 9.

Tucker, 404 U.S. at 447.  Although not cited by Movant, the Tucker Court continued:

> The record in the present case makes evident that the sentencing judge gave specific consideration to the respondent's previous convictions before imposing sentence upon him. Yet it is now clear that two of those convictions were wholly unconstitutional under Gideon v. Wainwright, 372 U.S. 335 (1963).

Tucker, 404 U.S. at 447 (footnote omitted). Thus, the error in Tucker arose from the sentencing judge's consideration of uncounseled prior convictions, which were rendered unconstitutional by Gideon.

A fuller reading of Townsend, which predated Gideon, shows that it involved the sentencing of an uncounseled defendant:

> The trial court's facetiousness casts a somewhat somber reflection on the fairness of the proceeding when we learn from the record that actually the charge of receiving the stolen saxophone had been dismissed and the prisoner discharged by the magistrate. But it savors of foul play or of carelessness when we find from the record that, on two other of the charges which the court recited against the defendant, he had also been found not guilty. Both the 1933 charge of larceny of an automobile, and the 1938 charge of entry to steal and larceny, resulted in his discharge after he was adjudged not guilty. We are not at liberty to assume that items given such emphasis by the sentencing court, did not influence the sentence which the prisoner is now serving.
>
> We believe that on the record before us, it is evident that this uncounseled defendant was either overreached by the prosecution's submission of misinformation to the court or was prejudiced by the court's own misreading of the record. Counsel, had any been present, would have been under a duty to prevent the court from proceeding on such false assumptions and perhaps under a duty to seek remedy elsewhere if they persisted. Consequently, on this record we conclude that, while disadvantaged by lack of counsel, this prisoner was sentenced on the basis of assumptions concerning his criminal record which were materially untrue. Such a result, whether caused by carelessness or design, is inconsistent with due process of law, and such a conviction cannot stand.
>
> We would make clear that we are not reaching this result because of petitioner's allegation that his sentence was unduly severe. The sentence being within the limits set by the statute, its severity would not be grounds for relief here even on direct review of the conviction, much less on review of the state court's denial of habeas corpus. It is not the duration or severity of this sentence that renders it constitutionally invalid; it is the careless or designed pronouncement of sentence

on a foundation so extensively and materially false, which the prisoner had no opportunity to correct by the services which counsel would provide, that renders the proceedings lacking in due process.

Nor do we mean that mere error in resolving a question of fact on a plea of guilty by an uncounseled defendant in a non-capital case would necessarily indicate a want of due process of law. Fair prosecutors and conscientious judges sometimes are misinformed or draw inferences from conflicting evidence with which we would not agree. But even an erroneous judgment, based on a scrupulous and diligent search for truth, may be due process of law.

In this case, counsel might not have changed the sentence, but he could have taken steps to see that the conviction and sentence were not predicated on misinformation or misreading of court records, a requirement of fair play which absence of counsel withheld from this prisoner.

Townsend, 334 U.S. at 740-41.

Unlike Burke and Townsend, this case does not involve an uncounseled defendant, either at sentencing or in prior convictions.  Thus, the magnitude of the constitutional concerns present in those cases is not present here.  Moreover, contrary to Movant's expansive reading of Burke and Townsend, the undersigned does not find that these cases support his due process argument, which is limited to his cooperation not being brought to the sentencing judge's attention pursuant to the Variance Waiver Provision in the plea agreement.  Therefore, the undersigned concludes that Movant has failed to establish that the Variance Waiver Provision is unconstitutional on its face.

 Movant also makes an "as applied" challenge to the Variance Waiver Provision, arguing that Attorney Suri's interpretation of the clause as precluding him from presenting cooperation evidence to the sentencing judge renders it unconstitutional.  Movant did not call Attorney Suri to testify at the Evidentiary Hearing regarding this issue, notwithstanding his being available and on stand-by to be called.  Movant only relies for this argument on his reading of the sentencing hearing transcript, where the only mention of cooperation came from the prosecutor.  See Transcript of

Sentencing Hearing, Ex. 3 at 29 (prosecutor stating that Movant "ha[d] made efforts to cooperate with the United States to a degree"). Concluding that Movant has not established the premise of this argument (Attorney Suri's purported interpretation of the Variance Waiver Provision) to any degree beyond speculation, and taking into account the failure of Movant's facial challenge, the undersigned similarly finds that Movant has failed to establish that the Variance Waiver Provision is unconstitutional as applied.

Therefore, the undersigned recommends that the Motion to Vacate be DENIED as to GROUND ONE.

### 2. *Ineffective assistance of counsel claims.*

In GROUND TWO and GROUND THREE, Movant makes the following ineffective assistance of counsel arguments: (1) that Attorney Suri was ineffective at the sentencing stage by failing to argue that Movant was not barred from introducing cooperation evidence at the sentencing hearing by the Variance Waiver Provision, as a purported alternative to GROUND ONE; (2) that Attorney Suri was ineffective at the sentencing stage by failing to seek a continuance of the sentencing hearing so that Movant could get the benefit of an upcoming revision to the sentencing guidelines; (3) that Attorney Suri was ineffective at the sentencing stage by not challenging the loss amount computed by the government; and (4) that Attorney Suri was ineffective at the plea stage by failing to explain to Movant the meaning and effect of the Variance Waiver Provision. The undersigned addresses each of these arguments in turn.

First, Movant contends that Attorney Suri was ineffective because he did not argue that the Variance Waiver Provision was not a bar to the presentation of cooperation evidence and did not go forward with such presentation. Movant claims that this is an alternative argument to GROUND ONE; however, it is the exact opposite of his "as applied" constitutional argument in

GROUND ONE, namely, that Attorney Suri interpreted the Variance Waiver Provision to bar him from presenting cooperation evidence to the sentencing judge.  Given his constitutional argument, Movant's ineffective assistance of counsel argument is contradictory and illogical.  Moreover, it is wholly speculative, given Movant's failure to adduce any testimony from Attorney Suri concerning his view of the Variance Waiver Provision.  Therefore, the undersigned finds no merit in this argument.

Second, Movant argues that Attorney Suri was ineffective because he did not seek a continuance of the sentencing hearing.  At the end of the change of plea hearing, the following colloquy ensued:

> MR. SURI: Your Honor, on that issue, if I can just have a word with the Court. As the Court knows, the Sentencing Commission is about to change some of the guidelines applicable November 1st. I believe they may impact this case. Would the Court kindly consider a sentencing date just over the November 1st date, since we are really running up right against it?
>
> THE COURT: Well, as I have done with another defendant, I will consider the proposed guidelines at the time of his sentence, so if it's a rule that's going to take effect on March 1st, I mean, November 1st, there is nothing that prohibits me from considering it before November 1st. So I will give it a regular date but just make sure you make that issue to me that there may be a sentencing guideline change and I will take that into account.
>
> MR. SURI: Thank you so much, Your Honor. I appreciate it, sir.

See Transcript of Change of Plea Hearing, Ex. 2 at 17.  Given this colloquy, it cannot be said that Attorney Suri's performance was deficient for not insisting that the Court defer the sentencing hearing until after November 1st.   See Grayson, 257 F.3d at 1216 (In order for counsel's performance to be considered unreasonable, it must be such that "no competent counsel would have taken the action that . . . counsel did take.").

Third, Movant argues that Attorney Suri was ineffective because he did not challenge at

the sentencing hearing the loss amount computed by the government.  With regard to this issue,

Attorney Suri made the following presentation to the Court:

> So, Your Honor, I will narrow my objection. I told Ms. Rochlin this before the hearing to say, yes, okay, I'll accept your 2.8 characterization, which I appreciate because they went back and did the work and I have been working with Ms. Rochlin and Agent Degnan. They are both very fine people. I appreciate that. I couldn't have come up with that.
>
> I am asking the Court to accept the 2.8 and to sentence him under the new guidelines.
>
> If the Court for some reasons feels that it cannot, and let's not forget the guidelines are – I've got the Booker, they're not mandatory. The Court has flexibility to use these guidelines. There is no reason why it should not
>
> I would say it also fits into a context of a variance, which I'll be asking you. It does not matter to me how the Court does it. I think it's cleaner just to do it up front and I think it would be fair, I think it would be just, and I think it would be correct.

See Transcript of Sentencing Hearing, Ex. 3 at 7-8.  Attorney Suri's decision to accept the

government's loss amount "after they went back and did the work," id., is entitled to a strong

presumption that it "falls within the wide range of reasonable professional assistance." Strickland,

466 U.S. at 689; see also Chandler, 218 F.3d at 1316 ("When courts are examining the performance

of an experienced trial counsel, the presumption that his conduct was reasonable is even stronger"

and the challenged actions may be considered sound strategy.).  Moreover, Movant's argument

that the amount was incorrect and should have been lower is based on events that occurred in

connection with co-defendants after Movant's sentencing; therefore, they have no impact on

Attorney Suri's performance.  Chandler, 218 F.3d at 1316 ("In reviewing counsel's performance,

a court must avoid using 'the distorting effects of hindsight' and must evaluate the reasonableness

of counsel's performance from counsel's perspective at the time.").

     Fourth, Movant argues that Attorney Suri was ineffective because he did not explain to him

the meaning and effect of the Variance Waiver Provision.  However, the undersigned has assigned

no credibility to Movant's testimony at the Evidentiary Hearing and found his attempts to establish lack of knowledge and understanding during the change of plea and sentencing process to be self-serving and wholly unworthy of belief.  Moreover, during the plea colloquy, Movant stated that he understood the Variance Waiver Provision.  See Transcript of Change of Plea Hearing, Ex. 2, at 7.  Finally, at the conclusion of the sentencing hearing, when given the opportunity to allocute, Movant simply said: "Thank you sir.  I think my lawyer did a pretty good job for me."  See Transcript of Sentencing Hearing, Ex. 3 at 35.  Therefore, there is no factual basis for this argument.

Having addressed Movant's four ineffective assistance of counsel arguments, the undersigned concludes that Movant has not met his burden of establishing that Attorney Suri's performance fell "outside the wide range of professionally competent assistance." Strickland, 466 U.S. at 690.  Therefore, Movant has not met the performance prong of Strickland.

Given this conclusion, the undersigned need not address the prejudice prong of Strickland. Id. at 697.  Nevertheless, the undersigned notes that, when asked by Attorney Suri, "Your Honor, was the Court going to consider a variance on my loss arguments?" the Court responded "I am." See Transcript of Sentencing Hearing, Ex. 3 at 35.  Moreover, the Court articulated its decision as follows:

> The Court considered the application of the proposed guidelines. The guideline range for a level 34, criminal history category 3 was 188 months to 235 months. Even considering the application of the new guideline range, the guideline range, 188 months still falls within that range. So the Court finds no need to vary as it is still within both the guideline ranges of 34 or the 32, and the Court does find that amount for Count 1 is sufficient but not greater than necessary.

Id. at 36.  Therefore, the undersigned concludes that Movant has not shown that, but for Attorney Suri's purported deficient performance, there is a reasonable probability that his sentence would have been different.  Strickland, 466 U.S. at 694.

Accordingly, the undersigned recommends that the Motion to Vacate be DENIED as to GROUND TWO.

### **RECOMMENDATION**

Based on the foregoing considerations, it is RESPECTFULLY RECOMMENDED that Presendieu's Motion to Vacate be DENIED.

The parties have **fourteen (14) days** from the date of receipt of this Report and Recommendation within which to serve and file objections, if any, with the Honorable Darrin P. Gayles, United States District Judge.  See Local Magistrate Rule 4(b).  Failure to timely file objections shall bar the parties from attacking on appeal the factual findings contained herein.  See Resolution Tr. Corp. v. Hallmark Builders, Inc., 996 F.2d 1144, 1149 (11th Cir. 1993).  Further, "failure to object in accordance with the provisions of [28 U.S.C.] § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions."  See 11th Cir. R. 3-1 (I.O.P. - 3).

RESPECTFULLY SUBMITTED in Chambers at Miami, Florida, this 17th day of September, 2020.


ALICIA M. OTAZO-REYES
UNITED STATES MAGISTRATE JUDGE


Copies provided to:
United States District Judge Darrin P. Gayles
Counsel of Record